Dear Chief Thorne:
As the Chief of Police for Springfield, Florida, you have asked for my opinion on substantially the following question:
Does Chapter 2010-188, Laws of Florida, require all law enforcement officers who are likely to work in the city's dispatch center and serve as a call-taker and dispatcher of 9-1-1 calls to be trained and certified?
In sum:
Pursuant to section 401.465(2)(a), Florida Statutes (2010), any public agency employee whose duties and responsibilities include answering, receiving, transferring, and dispatching functions related to 911 calls or supervising or serving as the command officer to a person or persons having these duties and responsibilities at a public safety answering point is required to be certified by the Department of Health by October 1, 2012. Training requirements are dependent upon personnel's length of employment as a 911 public safety telecommunicator.
Your question relates to a recently enacted law, Chapter 2010-188, Laws of Florida, which becomes effective July 1, 2010.[1] The Legislature's intent in adopting Chapter 2010-188, Laws of Florida, appears to have been the professionalization of E911 service by creating a mandatory statewide system for the certification and training of these personnel;[2] expanding the duties and functions of public safety telecommunicators;[3] adopting penalties for violations of the act;[4] and extending funding options for implementing the provisions of the act.[5]
In providing the bill analysis for Chapter 2010-188, Laws of Florida, committee staff described the present situation regarding the E911 system as follows:
"Emergency dispatchers are often the initial point of contact for the public when emergency assistance is required. Emergency dispatchers receive emergency calls from the public requesting police, fire, medical or other emergency services. These personnel determine the nature and location of the emergency, determine the priority of the emergency, and communicate the nature of the call to police, fire, ambulance, or other emergency units as necessary and in accordance with established procedures. Emergency dispatchers receive and process 911 emergency calls, maintain contact with all units on assignment, and maintain status and location of police, fire, and other emergency units, as necessary. Emergency dispatchers may be trained to enter, update, and retrieve information from a variety of computer systems to assist callers.
Many local agencies offer in-house training programs to their employees. Certification courses from private vendors are available to emergency dispatchers who may wish to show their proficiency in specified skills needed for emergency dispatch. The National Academies of Emergency Dispatch offers certification for emergency medical dispatchers, emergency fire dispatchers, emergency police dispatchers, and emergency telecommunicators. They provide a certification credential for medical, fire, and police functions in one comprehensive training program. The registration fees for these certification courses range from $320 to $550.
Emergency Dispatch in Florida
Section 365.171, F.S., governs Florida's public policy on the emergency telephone number "911." This statute specifies that it is the intent of the Legislature to "establish and implement a cohesive statewide emergency telephone number `911' plan which will provide citizens with rapid direct access to public safety agencies by dialing the telephone number `911' with the objective of reducing response time to situations requiring law enforcement, fire, medical, rescue, and other emergency services."
In Florida, local governments handle emergency dispatching in a variety of ways to accommodate local needs and budgeting priorities. The curriculum content and length of training programs vary by agency. According to the DOH, all 67 Florida counties have enhanced 911 dispatch, which allows an emergency dispatch center's computers to automatically provide the caller's name, address and mapped location. The map also identifies the closest police, fire, and emergency medical services (EMS) agencies. Emergency dispatch may be handled through one or more of the agencies that handle police, fire, and EMS.
With some variation, emergency calls in some counties go to a central dispatch. The dispatcher verifies the caller's location and the nature of the call, the call is then transferred to the appropriate dispatcher who dispatches the appropriate agency (law enforcement, EMS, fire) and Emergency Medical Dispatch (EMD) is utilized to provide the caller with instructions to treat the emergency while EMS is enroute.
In some counties, when a caller dials 911, the call is directed to the Sheriff's Office. The dispatcher will determine the nature of the call and location and then decide if the call is for EMS or fire. At this point, the call may be transferred to the appropriate agency to handle the emergency or the call may be forwarded to a public safety dispatch center. If equipped, the public safety dispatch center will then provide EMD and send the appropriate EMS or fire units to the scene or the appropriate fire units to a fire emergency."[6] (citations omitted)
Chapter 2010-188, Laws of Florida, amends section 401.465, Florida Statutes, to expand the definition of a "public safety telecommunicator" formerly an "emergency dispatcher." The term is defined as:
"`911 public safety telecommunicator' means a public safety dispatcher or 911 operator whose duties and responsibilities include the answering, receiving, transferring, and dispatching functions related to 911 calls; dispatching law enforcement officers, fire rescue services, emergency medical services, and other public safety services to the scene of an emergency; providing real-time information from federal, state, and local crime databases; or supervising or serving as the command officer to a person or persons having such duties and responsibilities. However, the term does not include administrative support personnel, including, but not limited to, those whose primary duties and responsibilities are in accounting, purchasing, legal, and personnel."[7]
The act requires that, effective October 1, 2012, any person who is employed as a "911 public safety telecommunicator" at a public safety answering point must be certified by the Department of Health.[8] A "public safety answering point," as that term is defined in section 365.172(3)(a), Florida Statutes, is "the public safety agency that receives incoming 911 calls and dispatches appropriate public safety agencies to respond to the calls." Thus, the statute requires that all personnel who meet the definition of a "911 public safety telecommunicator" be certified.
The Department of Health is charged with developing a program for the certification of E911 public safety telecommunicators. Requirements specified by the Legislature for certification include:
1. completion of an appropriate 911 public safety telecommunication training program;
2. certification under oath that the applicant is not addicted to alcohol or any controlled substance;
3. certification under oath that the applicant has no physical or mental defect or disease that might impair his or her ability to perform the duties of the job; and
4. submission of the prescribed fee and a completed application to the department.
As of October 1, 2012, applicants must pass an examination administered by the department measuring their competency and proficiency in the subject material of the public safety telecommunication training program.[9]
The statute also contains several "grandfather clause" provisions. The statute allows the waiver of the training program requirement for those persons employed as a 911 public safety telecommunicator, a sworn, certified law enforcement officer, or certified firefighter before April 1, 2012, who successfully pass the examination administered by the department. Further, the statute requires the Department of Health to establish a procedure for the initial certification of 911 public safety telecommunicators who can document at least 3 years of supervised full-time employment as a 911 public safety telecommunicator or an emergency dispatcher since January 1, 2002.[10] In addition, the statute recognizes that 911 public safety telecommunicator trainees may be employed without certification for a 12 month period if the trainee works under the direct supervision of a certified 911 public safety telecommunicator and is enrolled in a training program.[11]
Your letter also notes the funding problems associated with E911 training and certification. The Senate staff analysis reflects these concerns:
"E911 Fees
E911 fee revenues are collected as specified in s. 365.172, F.S., and are processed and disbursed through the Emergency Communications Number E911 System Fund, as outlined in s. 365.173, F.S. Expenditures for the E911 system are limited to call-taking and call transfer costs. The E911 Board has determined that training and certification costs for the 911 call-takers are allowable expenditures which include costs for emergency medical, police and fire pre-arrival instruction training and certification, as needed by the agencies. Although such costs have been determined to be allowable expenditures from the fund, the fee revenue in the fund does not fund all allowable expenditures. The Legislature recognizes that the fees authorized under s. 365.172, F.S., may not necessarily provide the total funding required for establishing or providing the E911 service."[12] (citations omitted)
Chapter 2010-188, Laws of Florida, amends current statutes to authorize local governments to use E911 funds for dispatcher training. Section 365.172(9), Florida Statutes, setting forth the uses for which E911 may be used, has been amended to include the fees paid to the Department of Health for the certification and recertification of 911 public safety telecommunicators and the training costs for these call takers. Specifically included in the authorized expenditures of the E911 fee are:
"(a) For purposes of this section, E911 service includes the functions of database management, call taking,dispatching, location verification, and call transfer.
(b) All costs directly attributable to the establishment or provision of E911 service and contracting for E911 services are eligible for expenditure of moneys derived from imposition of the fee authorized by this section. These costs include the acquisition, implementation, and maintenance of Public Safety Answering Point (PSAP) equipment and E911 service features, as defined in the Public Service Commission's lawfully approved 911 and E911 and related tariffs or the acquisition, installation, and maintenance of other E911 equipment, including call answering equipment, call transfer equipment, ANI controllers, ALI controllers, ANI displays, ALI displays, station instruments, E911 telecommunications systems, visual call information and storage devices, recording equipment, telephone devices and other equipment for the hearing impaired used in the E911 system, PSAP backup power systems, consoles, automatic call distributors, and interfaces, including hardware and software, for computer-aided dispatch (CAD) systems, integrated CAD systems for that portion of the systems used for E911 call taking, network clocks, salary and associated expenses for E911 call takers for that portion of their time spent taking and transferring E911 calls, salary and associated expenses for a county to employ a full-time equivalent E911 coordinator position and a full-time equivalent mapping or geographical data position and a staff assistant position per county for the portion of their time spent administrating the E911 system, training costs for PSAP call takers, supervisors, and managers in the proper methods and techniques used in taking and transferring E911 calls, costs to train and educate PSAP employees regarding E911 service or E911 equipment, including feescollected by the Department of Health for the certification andrecertification of 911 public safety telecommunicators as requiredunder s. 401.465, and expenses required to develop and maintain all information, including ALI and ANI databases and other information source repositories, necessary to properly inform call takers as to location address, type of emergency, and other information directly relevant to the E911 call-taking and transferring function. Moneys derived from the fee may also be used for next-generation E911 network services, next-generation E911 database services, next-generation E911 equipment, and wireless E911 routing systems."[13]
Text underlined in the quote represents amendments made by Chapter 2010-188, Laws of Florida.
In sum, it is my opinion that pursuant to section 401.465(2)(a), Florida Statutes (2010), any public agency employee whose duties and responsibilities include answering, receiving, transferring, and dispatching functions related to 911 calls or supervising or serving as the command officer to a person or persons having these duties and responsibilities at a public safety answering point is required to be certified by the Department of Health by October 1, 2012. Training requirements are dependent upon personnel's length of employment as a 911 public safety telecommunicator.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See s. 5, Ch. 2010-188, Laws of Fla.
[2] Florida has had, since 2008, a voluntary certification program for 911 emergency dispatchers.See s. 2, Ch. 2008-51, Laws of Florida, codified as s. 401.465, Fla. Stat.
[3] Section 3, Ch. 2010-188, Laws of Fla.
[4] Section 2, Ch. 2010-188, Laws of Fla.
[5] Section 1, Ch. 2010-188, Laws of Fla., amends s. 365.172, Fla. Stat., to add dispatching functions to uses of E911 fees.
[6] Bill Analysis and Fiscal Impact Statement of the Senate Health and Human Services Appropriations Committee on CS/CS/CS/SB 742, dated April 8, 2010.
[7] Section 3, Ch. 2010-188, Laws of Fla., amending s. 401.465(1)(a), Fla. Stat. 2009.
[8] Id., amending s. 401.465(2)(a), Fla. Stat. 2009.
[9] Section 3, Ch. 2010-188, Laws of Fla., amending s. 401.465(2)(d), Fla. Stat.
[10] Section 3, Ch. 2010-188, Laws of Fla., amending s. 401.465(2)(i) and (j), Fla. Stat.
[11] Section 3, Ch. 2010-188, Laws of Fla., amending s. 401.465(2)(b), Fla. Stat.
[12] Bill Analysis and Fiscal Impact Statement of the Senate Health and Human Services Appropriations Committee on CS/CS/CS/SB 742 dated April 8, 2010.
[13] See s. 1, Ch. 2010-188, Laws of Fla., amending s. 365.172(9)(b), Fla. Stat.